**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
WHOLE LIFE RECOVERY LLC, as assignee
of Austin Schilke

                                        **MEMORANDUM OF
DECISION AND ORDER**
                 Plaintiff,        16-cv-4031 (ADS) (AKT)

       -against-

AETNA LIFE INSURANCE COMPANY

               Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**Lawrence N. Rogak, LLC**
*Attorney for the Plaintiff*
3355 Lawson Boulevard
Oceanside, NY 11572
       By:    Lawrence N. Rogak, Esq., Of Counsel

**Connell Foley**
*Attorneys for the Defendant*
457 Haddonfield Road
Suite 230
Cherry Hill, NJ 08002
       By:    Christopher Abatemarco, Esq., Of Counsel

**SPATT, District Judge**:

       The Plaintiff, Whole Life Recovery LLC, as assignee of Austin Schilke (the "Plaintiff") commenced this breach of contract action in New York State Supreme Court. The Defendant Aetna Life Insurance Company (the "Defendant," or "Aetna"), removed the case to the United States District Court for the Eastern District of New York (the "EDNY"), invoking federal question jurisdiction claiming that the contract was governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

Presently before the Court are two motions: a motion by the Defendant to either dismiss the complaint pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) or 12(b)(3), or, in the alternative, to transfer venue pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) ("Section 1404" and "Section 1406"); and a cross-motion by the Plaintiff to remand the case back to state court pursuant to 28 U.S.C. 1447(c) ("Section 1447"). For the following reasons, the Defendant's motion is denied in its entirety, and the Plaintiff's cross-motion is granted.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the Plaintiff's complaint and are accepted as true for the purposes of the instant motion. The Plaintiff's complaint has seventeen numbered paragraphs and spans four pages.

The Plaintiff is a California limited liability company. (Complaint at ¶ 1). The Defendant is a licensed insurance company "with a place of business" in Melville, New York. (*Id.* at ¶ 2). Austin Schilke ("Schilke"), not presently a party to this action, received alcohol and/or drug treatment services from the Plaintiff between February 9, 2016 and April 22, 2016. (*Id.* at ¶ 3). Those treatment services were covered by an insurance policy issued to Corey D. Schilke by the Defendant. (*Id.* at ¶ 4). Although the Plaintiff's complaint does not state the relationship between Corey D. Schilke and Austin Schilke, the Defendant notes that the former is the father of Austin Schilke. The Plaintiff alleges that before it began treating Schilke, the Defendant confirmed that it would cover Schilke's treatment. (*Id.* at ¶ 5).

Schilke executed an assignment of rights and benefits to the Plaintiff, and the Plaintiff claims that said this agreement gave it the right to recover the amount owed to it from the Defendant. (*Id.* at ¶ 6). The Plaintiff submitted bills to the Defendant for the services that it

rendered to Schilke. (*Id.* at ¶ 7). The Plaintiff claims that the bills were submitted properly and in a timely fashion; and that they totaled $117,975.00. (*Id.*). The Defendant made partial payment on the bills in the amount of $44,902.00, leaving an outstanding balance of $73,073.

## B. Procedural Background

The Plaintiff filed its complaint in the Supreme Court of the State of New York, Suffolk County, on May 31, 2016. The Plaintiff alleged two causes of action: breach of contract and violation of the California Insurance Code section 790.03(h) for breach of good faith and fair dealing.

The Defendant removed the action to the EDNY on July 20, 2016, invoking federal question jurisdiction. Specifically, the Defendant claims ERISA governs the terms of the employee benefit plan upon which the Plaintiff is seeking recovery. The Defendant also noted in its notice of removal that although it believed that the federal courts were the proper forum for the action, it did not believe that the EDNY was the proper venue. The Defendant had not filed an answer when it removed the case to federal court.

On July 29, 2016, the Defendant filed a motion for an extension of time to file a responsive pleading. On August 5, 2016, the Court granted the Defendant's motion for an extension of time to file a responsive pleading, extending its time to file until August 18, 2016.

On August 16, 2016, the Defendant filed a motion asking the Court to either dismiss the complaint pursuant to Rule 12(b)(3) or 12(b)(6), or transfer venue to the Central District of California ("C.D. Cal.") pursuant to Sections 1404 or 1406. The Defendant attached one exhibit to its motion, which is labeled "Benefit Plan Prepared Exclusively for Bass Pro Groups LLC Aetna Choice POS II" (the "Benefit Plan"). In a supporting certification, a paralegal from Aetna said that the attachment showed "relevant portions" of Schilke's father's plan with Aetna. The

Defendant supplied the Court with five pages of the Benefit Plan, despite the fact that the Table of Contents shows that there are more than 71 pages.

As of January 11, 2017, the Plaintiff had not responded to the Defendant's motion, and therefore the Court directed the Plaintiff to show cause why the Defendant's motion should not be granted as unopposed.

On January 18, 2017, the Plaintiff filed a memorandum which had several titles: "Response to [Judge] Spatt's Order to Show Cause Dated January 11, 2017;" "Affirmation in Opposition to Defendant's Motion to Dismiss Complaint or Transfer Venue;" and "Affirmation in Support of Plaintiff's Cross Motion to Remand." In its response to the Court's Order to Show Cause, the Plaintiff said that it had been engaged in ongoing settlement negotiations with the Defendant. On January 23, 2017, the Defendant responded to the Plaintiff's memorandum, noting that the Plaintiff did not request any settlement negotiations until two months after the Defendant filed its motion. Both the Plaintiff and the Defendant addressed the merits of the Defendant's original motions in their papers, and accordingly the Court told the parties that it would treat their responses to the Order to Show Cause respectively as a memorandum in opposition, and a reply memorandum in support of the motion to dismiss.

## II. DISCUSSION

The Defendant's motion to dismiss pursuant to Rule 12(b)(6) and the Plaintiff's motion to remand both focus on whether the Plaintiff's state law causes of action are preempted by ERISA. If the state law causes of action are preempted by ERISA, the Plaintiff's complaint must be dismissed. If they are not preempted by ERISA, neither this court nor any federal court can exercise jurisdiction over the matter, because there would be no federal question for any court to consider and the amount in controversy does not meet the diversity of citizenship requirement.

Therefore, if the Plaintiff's state law causes of action are not preempted by ERISA, the Defendant's motion would have to be denied in its entirety and the Plaintiff's motion for remand would have to be granted.

**A. Whether a Federal Court Has Jurisdiction Over This Case**

Federal courts have original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law," and a defendant's assertion of a federal-law defense does not convert a state-law claim into a federal claim. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546, 95 L. Ed. 2d 55 (1987). However, an exception to this general rule exists where "a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 2063, 156 L. Ed. 2d 1 (2003). Said another way, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64. The Supreme Court has held that ERISA completely preempts many state law causes of action implicating employee benefit plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 2496, 159 L.ED.2d 312 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.").

In *Davila*, the Supreme Court established a two-pronged test to determine whether a state law claim is preempted by ERISA. A cause of action is preempted if (1) the plaintiff, "at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210.

The Second Circuit has divided the first *Davila* prong into two steps: (a) "whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B)," and (b) "whether the *actual claim* that plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Montefiore Med. Ctr. V. Teamsters Local 272*, 642 F. 3d 321, 328 (2d Cir. 2011) (emphasis in original). "The *Davila* test is conjunctive—that is, a state-law claim is preempted only if both prongs of the test are satisfied." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna U.S. Healthcare*, No. 15-cv-2007, 2015 WL 2183900, at *3 (S.D.N.Y. May 11, 2015) (citing *Montefiore*, 642 F.3d at 328).

**1. Davila Prong One, Step One**

Here, Schilke assigned his rights in the Defendant's health plan to the Plaintiff. As the Plaintiff alleged in its complaint, it "[stood] in the shoes of its [a]ssignor." (Complaint at ¶ 12). Health care providers that are validly assigned the right to reimbursement by their patients can bring claims under ERISA. *See Montefiore*, 642 F.3d at 330 (holding that "beneficiaries may assign their rights under ERISA § 502(a)(1)(B) to health care providers that have contracted to bill a benefit plan directly"); *Simon v. General Elec. Co.*, 263 F.3d 176, 177-78 (2d Cir. 2001) ("ERISA authorizes health plan participants and beneficiaries to bring civil enforcement actions"); *The Plastic Surgery Grp. v. United Healthcare Ins. Co. of N.Y.*, 64 F. Supp. 3d 459, 465 (E.D.N.Y. 2014) ("Plaintiff has alleged that each of the patients in question assigned their benefits to plaintiff, and accordingly, plaintiff is the type of party who could bring an ERISA claim."); *Enigma Mgmt. Corp. v. Multiplan, Inc.*, 994 F. Supp. 2d 290, 297 (E.D.N.Y. 2014) ("[The plaintiff] is the type of party that can bring a claim under ERISA because it 'stand[s] in the shoes of the [plan's] participants and beneficiaries in seeking to receive payment for medical

services rendered.'" (quoting *N. Shore–Long Island Jewish Health Sys., Inc. v. Local 272 Welfare Fund,* No. 12-cv-1056, 2013 WL 174212, at *5 (S.D.N.Y. Jan. 15, 2013)).

As the Defendant does not dispute that Schilke validly assigned his rights to the Plaintiff, the Court finds that the Plaintiff is the type of plaintiff that can bring claims under ERISA.

**2. Davila Prong One, Step Two**

The Plaintiff argues that its claims are not the type that can be construed as a colorable claim under ERISA because the case centers on a dispute involving the proper amount of payment, which the Second Circuit has said does not implicate ERISA. *See Montefiore*, 642 F.3d at 330–31. The Defendant contends in opposition that this is not an "amount of payment" case, but instead one that requires the Court to scrutinize the benefit plan. The Court finds that the second step of the first prong of the Davila test is not met because it is not clear from the record that the Plaintiff's claims are colorable under ERISA, and the burden lies with the Defendant in proving that removal was proper. The Court is unable to find that removal was proper based on the record.

In *Montefiore*, the Second Circuit distinguished between claims involving the "right to payment" and the proper "amount of payment." *Id.* at 331. The Court said that cases involving the right to payment "implicate coverage and benefits established by the terms of the ERISA benefit plan," *id.*, whereas claims involving an amount "are typically construed as independent contractual obligations between the provider and the PPO or the benefit plan." *Id.*

One court in the Second Circuit has explained the difference between the types of cases in the following manner:

> 'Right to payment' claims involve challenges to benefits determinations, depend on the interpretation of plan language, and often become an issue when benefits have been denied . . . . 'Amount of payment' claims involve the calculation and execution of reimbursement payments, depend on the extrinsic sources used for

7

> the calculation, and are commonly tied to the rate schedules and arrangements included in provider agreements.

*Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11-cv-8517, 2012 WL 4840807, at *4 (S.D.N.Y. Oct. 4, 2012)

The Defendant says that "because Plaintiff's claims are based on the alleged denial of payment of benefits under [Schilke]'s health plan, they involve the administration of benefits and relate to the plan." (Def.'s Mem. of Law at 12). In opposition, the Plaintiff states that the "Defendant paid only a minor portion of said bills, making unilateral reductions based upon the amounts that are allegedly 'usual and customary' for the treatment rendered by similar facilities in the same geographical area." (Pl.'s Mem. of Law at ¶ 4). Each argument is tailored to the standards in *Montefiore*. Certainly a denial or reduction of benefits would fall under the "right to payment" category, while a rate reduction based on locality is of the species discussed in *Neuroaxis* above which would be about the amount of payment.

While a Plaintiff may not artfully plead around the requirements of ERISA, *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005), if removal is based upon ERISA preemption, "[t]he defendant bears the burden of establishing that the case is preempted by ERISA and properly removed to federal court." *Enigma*, 994 F. Supp. at 296 (citing *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994)).

The Defendant has not provided any evidence that the failure to pay was related to a denial of benefits as it now claims. In its removal filing, the Defendant included the summons, complaint, and notice of removal. The certification and exhibit attached to the Defendant's motion mostly relate to whether Schilke or his father ever filed a grievance with the Defendant. The Plan does state in its paragraph about "Ongoing Course of Treatment" that

> [i]f you have received pre-authorization for an ongoing course of treatment, you will be notified in advance if the previously authorized course of treatment is intended to be terminated or reduced so that you will have an opportunity to appeal any decision to Aetna and receive a decision on that appeal before the termination or reduction takes effect.

(The Plan, Def.'s Ex. A at 66). The Defendant does not provide any further evidence that Schilke's coverage was in fact reduced. It is unclear to the Court whether the Defendant did not pay the Plaintiff because of "the calculation and execution of reimbursement payments, [which] depend on [] extrinsic sources used for the calculation, and are commonly tied to the rate schedules and arrangements included in provider agreements," *Neuroaxis*, 2012 WL 4840807, at *4, or because Schilke's plan did not cover the amount.

The Defendant does not dispute the Plaintiff's statement that the Plaintiff was not paid the full amount because the Defendant only paid it the usual and customary amount. In *Garber v. United Healthcare Corp.*, 15-cv-1638, 2016 WL 1734089 (May 2, 2016), the Court held that such a reduction fell within the category of "amount of payment" claims. *Id.* at 5 ("Plaintiff contends that the Fair Database [usual and customary rate] for the Gastric Band Procedure is arbitrary and artificially low, and . . . [w]hether Plaintiff is correct or not turns on the methodology . . . utilized to arrive at that [rate]; a determination does not depend upon the terms of any ERISA-governed insurance agreements . . . .")

Further, it is not clear to the Court that any court would need to interpret Schilke's plan with the Defendant. *See Garber*, 2016 WL 1734089, at *3 ("Generally, a plaintiff's claims should be placed in the right-to-payment category where the meaning of the plan language is disputed and requires the Court's interpretation." (internal citations and quotations omitted)); *see also Plastic Surgery Grp.*, 64 F. Supp. 3d at 467 (claims implicate right to payment where "there is no question that the Court will need to interpret the language of the Plan to resolve this

9

dispute"). Even if that were true, "[t]he need to reference plan language does not turn an amount of payment claim into a right to payment claim unless the meaning of the plan language is disputed and requires the Court's interpretation." *Neuroaxis*, 2012 WL 4840807, at *4.

The only statement that the Defendant makes to support its position references the Plaintiff's allegations—that "Plaintiff's claims are based on the alleged denial of payment of benefits under [Schilke]'s health plan." (Def.'s Mem. of Law at 12). In the Court's view, this interpretation misconstrues the Plaintiff's allegations. Although the Plaintiff may have attempted to artfully plead around ERISA, the Court reiterates that it is the Defendant's burden to prove that removal was proper. The Defendant has not provided any evidence that the Plaintiff's claims relate to a "right to payment" rather than an "amount of payment." Instead, the limited record does show that the Defendant has already submitted partial payment to the Plaintiff. That is, the Defendant, by paying a portion of what the Plaintiff billed, apparently does not dispute that the Plaintiff has a "right to payment."

One of the cases to which the Defendant cites illustrates the problem. In *Enigma*, 994 F. Supp. 2d 290, the court held that the case concerned a right to payment even though "the parties disagree on the *amount* . . . but they only disagree because [the defendant] asserts that [the plaintiff] does not have the *right* to full payment under the terms of the ERISA plan." *Id.* at 300; *see also N. Shore-Long Island Jewish Health*, 2013 WL 174212, at *5 ("[T]he only reason there is a dispute over amounts allegedly due to Plaintiffs is that the [insurer], by applying its rules for payment eligibility, concluded . . . that it had no obligation under the Plan to pay the monies Plaintiffs here seek. The claims thus implicate coverage determinations under the relevant terms of the plan.").

Unlike the defendants in *Enigma* and *North Shore*, the Defendant here has not claimed that the Plaintiff or Schilke did not have a "right" to the full payment. Instead, the Defendant repeatedly points to Schilke's failure to exhaust his administrative remedies. The other cases that the Defendant cites to support its position that this is a colorable claim under ERISA are inapplicable to the instant case. *See Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-CV-6551 TPG, 2014 WL 4058321, at *1 (S.D.N.Y. Aug. 15, 2014) (plaintiff alleged causes of action under ERISA); *N. Shore-Long Island Jewish Health Care Sys., Inc. v. MultiPlan, Inc.*, 953 F. Supp. 2d 419, 440 (E.D.N.Y. 2013) (plaintiff's own allegations made "clear that at least some its claims concern a denial of benefits" because the complaint said that the defendant improperly denied claims).

The Defendant also argues that the Plaintiff's claims, by their nature, are preempted by ERISA. While it is true, as the Defendant argues, that breach of contract claims and breach of good faith claims can be preempted by ERISA, as stated in *Montefiore*, they must still be of the type considered colorable under ERISA. The Court cannot say, based on this record, that the Plaintiff's breach of contract or breach of good faith claims are colorable under ERISA.

Of importance, courts must construe the removal statute strictly, *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S. Ct. 868, 85 L.Ed. 1214 (1941), and "[a]ll doubts about jurisdiction should be resolved in favor of remand to state court, *Macro v. Indep. Health Ass'n, Inc.*, 180 F. Supp. 2d 427, 431 (W.D.N.Y. 2001). Here, the record leaves doubts about whether the claim would be colorable, and it is unclear whether this Court has jurisdiction. Therefore, the Court must remand the case back to state court. *See Olchovy v. Michelin N. Am., Inc.*, No. 11-cv-1733, 2011 WL 4916891, at *7 (E.D.N.Y. Sept. 30, 2011) (recommending that the case be remanded because the defendants did not meet their burden of establishing that

11

plaintiffs' claimers were preempted by ERISA and that removal was proper), *report and recommendation adopted sub nom. Olchovy v. Michelin Northamerica, Inc.*, 2011 WL 4916564 (E.D.N.Y. Oct. 17, 2011) (Spatt, J.).

The Court finds that the Defendant has not met its the burden in proving that the case was properly removed under ERISA preemption, because it is unclear from the record why the Defendant did not pay the Plaintiff. The Court is unable to ascertain whether the payments were not made because of rate reductions based on locality or whether the Defendant reduced payments because of Schilke's plan.

Therefore, the Court finds that the claim is not the type that can be construed as colorable under ERISA, and the case fails to meet the second step of the first prong of *Davila*. The Court therefore need not address the second prong of Davila. *See Montefiore*, 642 F.3d at 332; *Garber*, 2016 WL 1734089, at *5 n.2.

Accordingly, the Plaintiff's state law causes of action are not preempted by ERISA, and this Court does not have jurisdiction over the case. There is no federal question for this Court to answer, and the amount in controversy does not exceed $75,000.

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the case or transfer venue in the alternative is denied because there is no federal question for this Court or any federal court to decide. For the same reasons, the Plaintiff's cross-motion to remand the case is granted. The Clerk of the Court is directed to remand this case to the Supreme Court of the State of New York, County of Suffolk.

It is **SO ORDERED:**

Dated: Central Islip, New York

January 28, 2017

                                              */s/ Arthur D. Spatt*

                                              ARTHUR D. SPATT

                                              United States District Judge